IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

BEVERLY BURKE, Individually, and as
Executrix of the Estate of DAVID REED
BURKE,

        Plaintiff,                                Civil Action No.: 5:20-CV-190 (JPB)

Vs.

GP TRANSPORTATION CO. d/b/a GP
TRANSCO, CINTAS CORPORATION,
SCHNEIDER LOGISTICS, INC. a/k/a
SCHNEIDER INTERNATIONAL,
KOKOSING CONSTRUCTION COMPANY,
INC., THE OLEN CORPORATION,
CG ENTERPRISES, INC.,
MCGRAW/KOKOSING, INC.
KOKOSING MATERIALS, INC., SWANK
CONSTRUCTION COMPANY, LLC and
SWANK CONSTRUCTION COMPANY,

        Defendants.

**PLAINTIFF'S RESPONSE TO GP TRANSCO'S
MOTION FOR PROTECTIVE ORDER**

        NOW COMES THE PLAINTIFF, by and through her undersigned counsel, James G. Bordas, III, Esquire, Christopher J. McCabe, Esquire and the law firm of Bordas & Bordas, PLLC, and hereby RESPONDS to Defendant, GP Transportation Co., as follows: the Motion should be DENIED for several straightforward reasons, including the following:

    (1)    The information requested by Plaintiff is clearly relevant to this case; and

    (2)    GP Transco has failed to satisfy its burden with respect to establishing the need for a protective order.

## ARGUMENT

**I.     Plaintiff's discovery to which GP Transco currently objects is clearly relevant and proper in the case as presently pled.**

The pleadings make it clear the discovery Plaintiff seeks is relevant to the claims and defenses at issue now. A request has been made to depose GP Transco's CEO Dominic Zastarski. The deposition questions will center around a number of relevant issues concerning her claims of vicarious liability, negligent entrustment, independent negligence against the commercial carrier. Plaintiff has also asked that punitive damages be awarded based on the reckless conduction of not only its employee/driver but also the reckless conduct of the corporation.

Rule 26(b)(1) of the West Virginia Rules of Civil Procedure states, in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

*Id*. "The question of the relevancy of the information sought through discovery essentially involves a determination of how substantively the information requested bears on the issues to be tried. However, under Rule 26(b)(1) of the West Virginia Rules of Civil Procedure, discovery is not limited only to admissible evidence, but applies to information reasonably calculated to lead to the discovery of admissible evidence." *Syl. Pt. 5, State ex rel. Arrow Concrete Co. v. Hill*, 194 W.Va. 239, 460 S.E.2d 54 (1995). Plaintiff submits that the deposition requested of Mr. Zastarski is directly relevant to the claims and defenses to be presented.

Defendant's counsel is correct that "this case involves a tragic accident which occurred on October 19, 2019 on Interstate 470 in Wheeling, Ohio County, West Virginia." Defendant's Motion however fails to divulge the total circumstances surrounding this preventable catastrophic

crash. For example, it fails to discuss the potential destruction of crash related evidence; the potential destruction of relevant evidence leading up to the time of the crash; the potential destruction of evidence concerning the driver of the GP Transco tractor trailer; issues sounding in the negligent entrust claims; GP Transco's CMS and BASIC safety scores leading up to and at time of crash; GP Transco's alleged failure to comply with its own corrective action plans for unsafe drive and hours of service violation submitted to Schneider Logistics; and the failure of Defendant's insurance carrier to tender the available limits under the applicable insurance policy thereby leaving its insured vulnerable to an excess verdict. This response should fill in the gaps and explain why Plaintiff should be able to depose Dominic Zastarski.

Before getting into the crux of the argument, this preventable crash was a "tragedy" that took the life of a great man. It is easy to say "tragedy" and then use the word but… The lives of countless other individuals have been affected by this tragedy. While admitting this to be a tragedy, why is GP Transco now not wanting to produce a witness that can shed light on why this "tragedy" occurred? Who better to address the relevant issues surrounding this case than the CEO of this commercial carrier who was ultimately responsible for the trucks/drivers he puts on the road, and the safety of the motoring public. Instead, GP Transco is trying to block the testimony of its supposed leader, hiding behind incomplete and insufficient testimony provided by handpicked employees and a Vice President of Safety who was not qualified to hold that position. What is GP Transco and its leader attempting to hide? Plaintiff's Reponses makes it clear why they do not want their leader to testify!

Mr. Burke on the day in question noticed the existing traffic conditions so he stopped his vehicle behind a USA tractor trailer. The GP Transco tractor trailer operator however continued driving at a high rate of speed until he slammed into Mr. Burke's vehicle. The violent collision pushed a portion of Mr. Burke's vehicle underneath the USA tractor trailer and the rest onto the

roadway's berm/shoulder. The GP tractor trailer continued forward, ripping through the USA trailer as if it were a canned good. It continued to travel approximately 100 more yards until slamming into a jersey barrier and catching on fire. Images of the catastrophic destruction caused by GP Transco tractor trailer are attached (Exhibit 1).

Plaintiff has asserted claims of vicarious liability, negligent entrustment and independent negligence against GP Transco. She also asserts that punitive damages are warranted against the motor carrier for its reckless and indifferent actions. The following are very important and key issues: (1) the speed of the GP Transco tractor trailer leading up to and at the time of the crash; (2) training GP Transco provided to its driver throughout his employment with the company; (3) GP Transco's knowledge of its employee's driving history/driving violations leading up to the crash; (4) GP Transco driver's actions/omissions leading up to and including the time of crash; (5) whether GP Transco did anything to abide by its own corrective action plans provided to Schneider Logistics based on unsafe driving and hours of service violations; (6) steps GP Transco took to preserve certain evidence relevant to the driver and the crash; (7) steps taken by the company to become a safer motor carrier; and (8) the obligations/requirements of GP Transco per its contract with Schneider Logistics. It is Plaintiff's position that GP Transco, to date, has not produced any witness to specifically address these important issues. Neither the corporate designees, nor the Vice President of Safety provided specific answers to these questions. It is believed, based on the testimony provided by these witnesses, that Mr. Zastarski can provide relevant testimony on these issues.

So what kind of driver was the operator of the GP Transco tractor trailer? That question should easily be answered by GP Transco according to certain documents produced in discovery. Specifically, GP Transco advised Schneider Logistics in writing that it was monitoring driver performance and such was being documented; however, no documents were produced in discovery

demonstrating that such monitoring occurred, especially concerning the operator of the tractor trailer which killed Mr. Burke. We do know because of the Wheeling Police Department's investigation, the GP Transco driver had at least 4 moving/hours of service violations during the 10-months leading up to the crash (Exhibit 2). None of these violations were noted in his driver qualification file and/or any document turned over by GP Transco in discovery. Moreover, the Vice President of Safety could not answer questions on these violations, monitoring of drivers conduct and record keeping of driver's safety issues. Ultimately she testified that Mr. Zastarski was her direct supervisor and ultimately responsible for safety at the company. Who better to be responsible for the ultimate safety of this company other than Mr. Zastarski. Accordingly, he can provide relevant testimony concerning various issues surround safety.

Before getting into GP Transco's actions/omissions, we need to discuss the relationship that existed between GP Transco and Schneider Logistics. On June 29, 2018, GP Transco and Schneider Logistics entered into a Master Transportation Service Agreement (Exhibit 3) and Transportation Schedule (Exhibit 4). Schneider Logistics had entered into a Master Agreement for Logistic Services with the Cintas Corporation (Exhibit 5). Per that Agreement, Schneider Logistics was required to provide certain logistics and management services concerning the transportation of Cintas loads from various points/destination. Schneider Logistics in doing so could utilize certain motor carriers such as GP Transco. Notably, GP Transco was transporting a Cintas load at the time of the crash. Notably, the corporate designee who was designated to discuss topics surrounding the aforementioned contracts between GP Transco/Schneider was not even employed by the company when the contract was entered into. His job roles/functions have nothing to do with the relation between those entities and those contracts. Accordingly, we believe Mr. Zastarski would have relevant information on some follow-up questions on those contracts.

Schneider Logistic, per its agreement with GP Transco, could monitor the performance of the motor carrier and its drivers whenever transporting these Cintas loads. If Schneider Logistics were to identify any problems, it could request that the motor carrier provide and implement a written corrective action plan identifying the root causes and processes used to eliminate the defect (Exhibit 6).

During their year and a half contractual relationship leading up to the crash, Schneider Logistics requested that GP Transco submit not one, not two but four root cause analysis/corrective actions plans concerning unsafe driving and hour of service scores falling below the industry threshold (Exhibit 7). GP Transco provided these requested plans (Exhibit 8) but the motor carrier's conduct, actions and scores never improved, and in fact got worse. Notably, GP Transco's scores in unsafe driving and hours of service violation were among the worst in the country when the crash occurred (Exhibit 9). Please be advised that the worst score a carrier can receive is 100, meaning only 3% of carriers throughout the county had worse unsafe driving scores and 16% had worse Hours of Service Compliance scores. So why were the scores so poor? Why did the scores not improve despite submitting 4-corrective action reports/plans? What was GP Transco doing to ensure the steps outlined in their 4-corrective action plans were being followed/implemented? What concerns did the company have that its corrective action plans were not working evidenced by the scores rising and continued requests that corrective action planes he provided?

Witnesses to date have not provided responsive testimony concerning these issues. Based upon the testimony of witnesses so far, Plaintiff believes that Mr. Zastarski can provide relevant testimony concerning:

- Why he believes the scores were not improving;
- What steps the company was in fact taking to ensure that all protocols being outlined in the corrective action plans were being followed;

- Conversations between GP Transco and Schneider Logistics concerning the constant requests that corrective action plans/root cause analysis be submitted because of unsafe driving and hour of service violations;

- If Schneider Logistics ever discussed with the carrier termination the Transportation Agreement because of the continued requests for corrective actions plans/root cause analysis;

- His discussion with the safety department regarding the corrective action plans and why the scores were not improving;

- Why unsafe driving scores kept falling below industry threshold;

- Discussion held in safety meetings regarding these unsafe driving scores and hours of service violation falling below threshold;

- Monitoring drivers safety performance and keeping track of same;

- Monitoring safety files for drivers;

- Keeping safety scores for drivers; and

- What the company was really doing to improve these scores.

Mr. Zastarski, based on the testimony to date, should have relevant information concerning these issues.

GP Transco documents/testimony indicate that all tractors were equipped with a program that recorded speed and that the company would monitor speed of its vehicles (Exhibit 10). Plaintiff has been provided with no information concerning speeding violations/issues associated with the subject driver. Why is this important? If noted, such would be found on the "Driver Safety Report" which generated a "safety score." Speed is not the only factor going into the "safety score." Moving and hours of service violation would go into the score. Notably, even if the driver did not have any speeding violations, he had at least 4-moving/hours of services violations at the time of this crash.  If the company was truly keeping a safety card on each driver, what was his safety score at the time of the crash?  Should be even have been driving based on that safety score?  Did he undergo required refresher trainer as provided under the company rules/regulations.   None of

this information has been produced and no competent testimony has been provided on these issues. Mr. Zastarski, based on the testimony to date, should have relevant information concerning these issues, specifically, steps the company took to preserve evidence.

GP Transco documents/testimony indicate that the subject tractor was equipped with dual facing cameras which uploads/saves certain footage/information (Exhibit 11). Despite GP Transco indicating it does not have any footage/information from those cameras, nothing has been provided by way of an explanation of how they tried to retrieve said information. Did they just look on their own software? Did they contact the third party provider? Is there documentation/correspondence between GP Transco and the third party provider noting the request for information and a response that it is not available? Mr. Zastarski, based on the testimony to date, should have relevant information concerning these issues, specifically, steps the company took to preserve evidence.

GP Transco documents/testimony indicates that drivers were supposed to undergo monthly training. However, testimony also provides that rule was not followed. The Vice President of Safety had no response to these question, other than the rule was not followed. Accordingly, Mr. Zastarski, based on testimony to date, should have relevant information concerning this issue and why training was not being provided pursuant to the company's own mandates/requirements.

GP Transco documents/testimony indicate that the subject tractor was equipped with technology called Samsara, which could monitor a vehicle's speed through a trip. That information according to testimony can be requested/retrieved. Despite GP Transco indicating that it does not have speed information for the tractor trailer in question, nothing has been provided by way of an explanation of how the company tried to retrieve said information. Did they just look on their own software? Did they contact the third party provider? Is there documentation/correspondence between GP Transco and the third party provider noting the request for information and a response that it is not available? We believe there is information out there regarding speed of the tractor

trailer up to and including the time of the crash.  Mr. Zastarski, based on the testimony to date, should have relevant information concerning these issues, specifically, steps the company took to preserve evidence.

Plaintiff also has the right to know about GP Transco's net worth and assets based on the punitive damage claim and the possibility of an excess verdict.  Mr. Zastarski, based on the testimony to date, should have relevant information concerning these issues.

## CONCLUSION

For all of the reasons stated herein, GP Transportation's motion should be denied.  In accordance with Rule 26(c) of the West Virginia Rules of Civil Procedure, Plaintiff requests that the Court overrule the objections to the requested discovery and instruct GP Transportation to provide dates that Dominic Zastarski can be made available for a deposition in Chicago in the next 20-days.

                                                Beverly Burke, Individually and as
                                                Executrix of the Estate of David Reed
                                                Burke, Plaintiff

By:    */s/ Christopher J. McCabe, Esq.*
           James G. Bordas III, Esq. (#8518)
           Christopher J. McCabe, Esq. (#13652)
           BORDAS & BORDAS, PLLC
           1358 National Road
           Wheeling, WV 26003
           T: (304) 242-8410
           F: (304) 242-3936
           jbordasiii@bordaslaw.com
           cmccabe@bordaslaw.com
           *Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT WHEELING

BEVERLY BURKE, Individually, and as
Executrix of the Estate of DAVID REED
BURKE,

        Plaintiff,                              Civil Action No.: 5:20-CV-190 (JPB)

Vs.

GP TRANSPORTATION CO. d/b/a GP
TRANSCO, CINTAS CORPORATION,
SCHNEIDER LOGISTICS, INC. a/k/a
SCHNEIDER INTERNATIONAL,
KOKOSING CONSTRUCTION COMPANY,
INC., THE OLEN CORPORATION,
CG ENTERPRISES, INC.,
MCGRAW/KOKOSING, INC.
KOKOSING MATERIALS, INC., SWANK
CONSTRUCTION COMPANY, LLC and
SWANK CONSTRUCTION COMPANY,

        Defendants.

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing ***Plaintiff's Response to Defendant GP Transco's Motion for Protective Order*** was served upon the following via Regular U.S. Mail and/or electronic mail this 22nd day of March, 2022 and electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

| | |
|---|---|
| Melvin F. O'Brien, Esq.<br>Michelle D. Baldwin, Esq.<br>DICKIE, McCAMEY & CHILCOTE, L.C.<br>2001 Main Street, Suite 501<br>Wheeling, WV 26003<br>mobrien@dmclaw.com<br>mbaldwin@dmclaw.com<br>*Counsel for Defendant*<br>*Schneider Logistics, Inc.* | Robert D. Moseley, Jr., Esq.<br>MOSELEY MARCINAK LAW GROUP<br>4324 Wade Hampton Blvd, Suite B<br>Taylors, SC 29687<br>rob.moseley@momarlaw.com<br>*Counsel for Defendant*<br>*Schneider Logistics, Inc.* |

<div style="display:flex">
<div>

John W. Burns, Esq.
GORDON REES SCULLY MANSUKHANI
41 South High Street, Suite 2495
Columbus, Ohio 43215
jburns@grsm.com
*Counsel for Cintas Corporation*

Timothy A. Montgomery, Esq.
Julie A. Brennan, Esq.
PION, NERONE, GIRMAN, WINSLOW
& SMITH, P.C.
1500 One Gateway Center
420 Fort Duquesne Boulevard
Pittsburgh, PA 152222
tmontgomery@pionlaw.com
jbrennan@pionlaw.com
*Counsel for GP Transportation Co.*

</div>
<div>

Ben M. McFarland, Esq..
Melanie Morgan Norris, Esq.
Steptoe & Johnson PLLC
1233 Main Street, Suite 3000
P.O. Box 751
Wheeling, WV 26003
Ben.mcfarland@steptoe-johnson.com
Melanie.norris@steptoe-johnson.com
*Counsel for Kokosing Construction, Inc., McGraw/Kokosing, Inc. and Kokosing Materials, Inc.*

Rita Massie Biser, Esq.
Lynnette Simon Marshall, Esq.
Moore & Biser, PLLC
317 Fifth Street
South Charleston, WV 25303
rbiser@moorebiserlaw.com
lmarshall@moorebiserlaw.com
*Counsel for Swank Construction Company and Swank Construction Company, LLC*

</div>
</div>

Beverly Burke, Individually and as Executrix of the Estate of David Reed Burke, Plaintiff

By:    */s/ Christopher J. McCabe, Esq.*
       James G. Bordas III, Esq. (#8518)
       Christopher J. McCabe, Esq. (#13652)
       BORDAS & BORDAS, PLLC
       1358 National Road
       Wheeling, WV 26003
       T: (304) 242-8410
       F: (304) 242-3936
       jbordasiii@bordaslaw.com
       cmccabe@bordaslaw.com
       *Counsel for Plaintiff*