

# MASTER TRANSPORTATION SERVICES AGREEMENT

This Master Transportation Services Agreement ("Agreement"), effective as of June 29, 2018 ("Effective Date"), is made by and between Schneider Logistics, Inc. ("SLI"), and **GP Transportation Co dba GP Transco** ("SERVICE PROVIDER"), a/an Illinois business, located in Darien, IL.

WHEREAS, SLI is a licensed transportation broker and logistics company which controls the transportation of freight under its contractual arrangements with various consignors and consignees ("Customer(s)");

WHEREAS, SERVICE PROVIDER is authorized to operate in international, interstate, intra-provincial, and/or intrastate commerce all as described and defined by SERVICE PROVIDER's operating authorities attached hereto and incorporated herein; and

WHEREAS, SLI's Customer(s) have distinct transportation needs and SLI desires to engage the services of SERVICE PROVIDER within the limits of its various operating authorities for transportation of Customer's freight as provided in each attached Transportation Schedule executed from time to time pursuant to this Agreement.

NOW, THEREFORE, in consideration of the above recitals and the following covenants, the parties hereto agree as follows:

**1. Transportation and Related Services.**

**1.1 Order of Precedence.** When a Transportation Schedule has been executed between the parties, it shall be considered a separate and enforceable contract incorporating the terms and conditions of this Agreement and shall contain such additional and/or alternative terms and conditions as the parties shall agree upon. In the event of a conflict between the language of this Agreement and any Transportation Schedule, the language of a Transportation Schedule shall prevail with respect to that Transportation Schedule, except that the language of Section 6.5 of this Agreement shall control and prevail over any conflicting language in any Transportation Schedule, exhibit, schedule, bill of lading, shipping document, attachment, Amendment, Addendum, and/or Service Provider, Customer or SLI paperwork of any kind.

**1.2 Commencement of Services.** No commitment to obtain transportation and related services from SERVICE PROVIDER is made by SLI except as maybe otherwise explicitly set forth in this Agreement or a Transportation Schedule. SERVICE PROVIDER agrees to retain a copy of this Agreement and all Transportation Schedules executed pursuant to this Agreement for at least three (3) years after termination of this Agreement, and all shipping documents issued to SERVICE PROVIDER by SLI or its Customer(s) or to SLI or its Customer(s) by SERVICE PROVIDER for at least three (3) years after the movement of a shipment.

SLI's Initials: [signature]    SERVICE PROVIDER's Initials: DD

Date: 6/25/18    Date: 6/4

PLAINTIFF'S EXHIBIT 3

CONFIDENTIAL



**1.3 Performance of Services.** SERVICE PROVIDER agrees to meet the distinct needs of SLI and Customer(s) by providing the transportation and related services as requested. SERVICE PROVIDER shall transport Customer's freight without delay and all occurrences which cause delay shall be communicated to SLI within twenty-four (24) hours by SERVICE PROVIDER. Every shipment tendered to SERVICE PROVIDER shall be deemed to be tendered to SERVICE PROVIDER in its capacity as a carrier of property and not in its capacity as a broker.

**1.4 Non-Exclusive Dealing.** This Agreement does not grant SERVICE PROVIDER an exclusive right to perform the transportation and related services for SLI's Customer(s) except as maybe otherwise explicitly set forth in this Agreement or a Transportation Schedule. SLI does not guarantee, and SERVICE PROVIDER acknowledges and agrees there is no guarantee of any minimum amount or any specific amount of shipments, tonnage, or revenue provided to SERVICE PROVIDER. SERVICE PROVIDER acknowledges that SLI may not tender any shipments of freight to SERVICE PROVIDER hereunder or under a Transportation Schedule, and SERVICE PROVIDER confirms that SLI shall not be in breach of this Agreement by failure to so tender any shipments of freight to Service Provider; provided, however, that in the event that a Transportation Schedule *expressly* provides for a minimum tender of shipments of freight, then SLI shall tender such minimum amount of shipments of freight to SERVICE PROVIDER, but shall have no requirement to tender any shipments of freight in excess thereof.

SERVICE PROVIDER further agrees and acknowledges that SLI's failure or decision not to tender any shipments of freight to SERVICE PROVIDER (or, if applicable, any shipments of freight in excess of any minimum number of shipments of freight *expressly* set forth in a Transportation Schedule), or otherwise reducing any amount of tenders of shipments of freight that SLI previously tendered, on a regular basis, to SERVICE PROVIDER, shall not constitute an effective termination of this Agreement or any Transportation Schedule.

In light of the foregoing, any purchase or investment by SERVICE PROVIDER in capital, equipment, property, or any other expense or cost whatsoever incurred by SERVICE PROVIDER in connection with this Agreement and/or a Transportation Schedule, shall be made at SERVICE PROVIDER's own risk and with full knowledge that SERVICE PROVIDER may not be tendered any shipments of freight (except as may be otherwise *expressly* set forth herein or in a Transportation Schedule), and SERVICE PROVIDER hereby agrees to, and does, release, waive, and hold harmless SLI from, any claim with respect to such purchase or investment.

**1.5 Back Solicitation.** SERVICE PROVIDER shall not during the term of this Agreement, and for six (6) months thereafter, knowingly, directly or indirectly, solicit the traffic of the freight between the origins and destinations that were first offered to SERVICE PROVIDER by SLI. SERVICE PROVIDER shall not back solicit any business from existing Customers of SLI. If SLI determines that SERVICE PROVIDER has breached this provision of the Agreement, SLI may terminate this Agreement immediately.

**2. Term.** The term of this Agreement shall commence on the Effective Date and shall continue thereafter. Either party may terminate this Agreement, which shall also automatically terminate any and

SLI's Initials: [signature]

Date: 6/25/18

SERVICE PROVIDER's Initials: DD

Date: 6/4

CONFIDENTIAL



or all Transportation Schedules, upon ninety (90) days prior written notice to the other party. If SERVICE PROVIDER fails to perform its obligations under this Agreement and/or a Transportation Schedule in the absence of a force majeure condition as defined in Section 9.3 of this Agreement, and the SERVICE PROVIDER is notified of such failure to perform and fails to cure such failure promptly, then SLI may immediately terminate the affected Transportation Schedule(s) and/or this Agreement.

3. **Compliance with Applicable Laws and Regulations.**

3.1 **Compliance.** SERVICE PROVIDER agrees to comply with all applicable provisions of any international, federal, national, provincial, state and/or local law, rule, and regulation. Without limiting the foregoing, SERVICE PROVIDER shall, at SERVICE PROVIDER's expense, comply with all laws, statues. rules and regulations (including but not limited to (a) complying with all laws, rules and regulations of the United States and Mexico, (b) obtaining all permits, licenses and authorizations, and (c) complying with all regular border and random roadside inspections) which are required for SERVICE PROVIDER to provide the transportation and related services under this Agreement and each Transportation Schedule.

3.2 **Non-Discrimination.** SERVICE PROVIDER agrees not to discriminate against any employee or applicant for employment because of age, race, color, creed, religion, gender, sex, national origin or disability, or any other prohibited ground, and SERVICE PROVIDER shall comply with all laws pertaining to equal employment opportunities which SERVICE PROVIDER may be subject.

3.3 **SERVICE PROVIDER's Safety Rating.** Service Provider shall not have an "unsatisfactory" or "conditional" safety rating from the U.S. Department of Transportation. If SERVICE PROVIDER at any time receives a rating of "conditional" or "unsatisfactory," SERVICE PROVIDER shall immediately (in no event more than forty-eight (48) hours after SERVICE PROVIDER's receipt thereof) notify SLI in writing of such change. SERVICE PROVIDER agrees not to accept a shipment if that shipment would require SERVICE PROVIDER or any of its agents, employees, or subcontractors to exceed or violate any speed or safety laws or related regulations.

3.3.1 **Safety Evaluation.** SLI will periodically review safety scores unsatisfactory to SLI. SLI may address with SERVICE PROVIDER an appropriate course of corrective action if applicable or prudent.

4. **Relationship.**

4.1 **Independent Contractor.** SERVICE PROVIDER agrees that SERVICE PROVIDER is an independent contractor of SLI and that SERVICE PROVIDER has exclusive control and direction of the work SERVICE PROVIDER performs pursuant to this Agreement and when applicable each Transportation Schedule. SERVICE PROVIDER agrees to assume full responsibility for the payment of all local, state, federal and provincial payroll taxes, and contributions or taxes for unemployment insurance, workers' compensation insurance, pensions, and other social security or related taxes with respect to the persons employed and/or engaged by SERVICE PROVIDER for SERVICE PROVIDER's

SLI's Initials: [signature] Date: 6/25/18

SERVICE PROVIDER's Initials: DD Date: 6/4

performance of the transportation and related services under this Agreement and/or Transportation Schedule, and SERVICE PROVIDER agrees to indemnify, defend and hold SLI and its Customer(s) harmless therefrom. SERVICE PROVIDER shall provide SLI with SERVICE PROVIDER's Federal Tax ID number and a copy of SERVICE PROVIDER's IRS Form W-9 prior to commencing any transportation or related services under this Agreement.

**4.2 Personnel.** SERVICE PROVIDER agrees to provide properly qualified, trained and licensed personnel to perform the transportation and related services under this Agreement and, as applicable, each Transportation Schedule in a safe, efficient, and economical manner. SERVICE PROVIDER's personnel (whether employees, agents, or independent contractors) are expected to conduct themselves in a professional manner at all times, and shall comply with all of Customer's known rules and regulations while on Customer's premises.

**4.3 Equipment.** SERVICE PROVIDER agrees to provide, operate, and maintain, in good and safe working condition, and in compliance with any foreign, international, federal, provincial, state and/or local law, applicable rules, and regulations in which the equipment is required to operate. All equipment furnished by SERVICE PROVIDER shall be clean, and free of any defects or contaminating odor, and shall in all other respects be suitable and legal for the transportation of Customer's freight.

**5. Insurance.** SERVICE PROVIDER, at SERVICE PROVIDER's sole expense, shall maintain the following minimum insurance requirements during the term of this Agreement and each Transportation Schedule executed pursuant to this Agreement:

(a) Broad form commercial general liability insurance, including contractual liability coverage for all liability assumed by SERVICE PROVIDER under this Agreement and each Transportation Schedule, with minimum limits of liability of not less than One Million Dollars ($1,000,000.00 USD) per occurrence for bodily injury and/or property damage.

(b) Automobile liability insurance (including owned, non-owned and hired vehicles) with minimum limits of not less than One Million Dollars ($1,000,000.00 USD) per occurrence for bodily injury and property damage.

(c) Cargo liability insurance with minimum limits of not less than One Hundred Thousand Dollars ($100,000.00 USD) per shipment for all liability assumed by SERVICE PROVIDER under this Agreement and each Transportation Schedule.

(d) Workers compensation insurance in an amount not less than the limits required by the state or province in which SERVICE PROVIDER performs transportation and related services, including employer's liability insurance in an amount not less than Five Hundred Thousand Dollars ($500,000.00 USD). If SERVICE PROVIDER is self-insured, a certificate from the state or province in which SERVICE PROVIDER performs transportation-and related services must be furnished by such state or provincial agency directly to SLI.

CONFIDENTIAL



SLI's Initials: [signature]

Date: 6/25/18

SERVICE PROVIDER's Initials: D

Date: 6/4



(e) Any insurance coverage required by any governmental body for the type of transportation and related services specified in this Agreement or a Transportation Schedule.

All insurance required by this Agreement or Transportation Schedule for services provided in the continental United States must be written by an insurance company having a A.M. Best's rating of "B+" or better and must be authorized to do business in the state(s) or province(s) in which SERVICE PROVIDER performs the transportation and related services. SERVICE PROVIDER's insurance shall be primary and required to respond and pay prior to any other available coverage. SERVICE PROVIDER agrees that SERVICE PROVIDER, SERVICE PROVIDER's insurer(s), and anyone claiming by, through or under SERVICE PROVIDER shall have no claim, right of action, or right of subrogation against SLI or its Customer based on any loss or liability insured under the foregoing insurance. SERVICE PROVIDER shall, prior to providing any transportation or related services, name SLI as an additional insured on their general and automobile liability policies and as a certificate holder on their cargo liability and workers compensation insurance policies and shall cause its insurance company to issue a certificate to SLI evidencing the foregoing coverage. SERVICE PROVIDER represents and warrants that it will continuously fulfill the requirements of this Section throughout the duration of this Transportation Schedule. SLI shall be notified in writing by SERVICE PROVIDER's insurance company at least thirty (30) days prior to the cancellation, change or non-renewal of the submitted insurance policies. The insurance amounts in this Section 5 shall in no way limit the amount of SERVICE PROVIDER'S liability.

6. **<u>SERVICE PROVIDER's Rates and Charges.</u>**

**6.1 <u>Rates and Charges</u>.** SERVICE PROVIDER represents and warrants that there are no other applicable rates or charges except those that would be established in the exhibit. From time to time SERVICE PROVIDER and SLI will enter into an agreement specifically listing all applicable rates and charges (including accessorials and fuel) in the form of a spot quote for the specific movement(s). Spot quotes will be considered a counterpart of this Agreement and shall constitute the same standing as an addendum. Spot quotes will be established by authorized representatives of SLI and SERVICE PROVIDER. All of SERVICE PROVIDER'S valid rates and charges are the obligations of the applicable Customer's or payment processing agents designated by Customer's. SLI, its parent and affiliates, and their respective directors, officers, employees, agents, successors, and assigns (all "Schneider") shall not be responsible for, nor have any liability to pay, SERVICE PROVIDER in any instance where Customer does not pay, payment processing agent(s) designated by Customer, have not received funding from the Customer, or payment processing agent designated by Customer fails to pay for SERVICE PROVIDER's Freight Charges including accessorials.

**6.2 <u>Computation of Freight Charges</u>.** SERVICE PROVIDER agrees that SLI is currently an authorized licensee of Rand McNally-TDM, Inc.'s ("TDM") MileMaker System, version Mileage Guide ICC HGB 100-G, Tariff number 19, and any subsequent revisions to this guide, and that SERVICE PROVIDER's Freight Charges that are based on miles will, unless otherwise notified in writing, be determined using the shortest route calculation in TDM's MileMaker System. SERVICE PROVIDER agrees that the mileage data generated through SLI's use of TDM's MileMaker System are

CONFIDENTIAL

SLI's Initials: [signature]

Date: 6/25/18

SERVICE PROVIDER's Initials: DD

Date: 6/4



confidential and proprietary to TDM and that SERVICE PROVIDER will only use the mileage data provided to SERVICE PROVIDER to perform SERVICE PROVIDER's transportation and related services.

**6.3 Payment.** SERVICE PROVIDER shall bill the rates and charges set forth in a Transportation Schedule for SERVICE PROVIDER's transportation and related services performed within one hundred eighty (180) days after delivery date. Customer shall pay the rates and charges for SERVICE PROVIDER's services. SLI, its parent and affiliates, shall not be responsible for nor have any liability to pay SERVICE PROVIDER in any instance where the Customer does not pay or payment processing agents designated by Customer do not receive funding from said Customer for said rates and charges for services. The payment processing agents designated by Customer shall pay SERVICE PROVIDER for its services thirty (30) days after SERVICE PROVIDER's invoice date provided SERVICE PROVIDER has submitted all required information / documentation and provided further that the payment processing agent has received the funding for the same. These requirements may include, but are not necessarily limited to, proof of delivery, a signed Customer's bill of lading and/or a signed delivery receipt. For shipments tendered by SLI, SERVICE PROVIDER shall submit load delivery/completion information upon each shipment delivery. The payment processing agents designated by Customer or Customer may refuse SERVICE PROVIDER invoices received one hundred eighty (180) days or more after the shipment delivery date. SERVICE PROVIDER shall be liable for the cost of processing more than one invoice per shipment if additional invoices are due to SERVICE PROVIDER's negligence. SERVICE PROVIDER shall provide the payment processing agents designated by Customer or Customer with SERVICE PROVIDER's depository institution, bank routing number and account number within ten (10) days of payment processing agent or Customer's request.

**6.4 Overcharge and Undercharge Claims.** SERVICE PROVIDER agrees to bill for all of SERVICE PROVIDER's transportation and related services in a timely, accurate, and complete fashion. SERVICE PROVIDER, on behalf of itself, its parent, affiliates, subsidiaries, officers, directors, employees, successors, assigns, representatives and agents hereby waives, releases and agrees to indemnify, defend and hold harmless SLI and its Customer(s) from and against any and all lawsuits, claims, causes of action, liabilities, judgments, costs, expenses, attorneys' fees, and experts' fees, lawsuits and expenses related to or arising out of any undercharge, improperly filed tariff and/or schedule and/or other related liability for SERVICE PROVIDER's transportation and related services not included in SERVICE PROVIDER's freight bill. Any action or claim by SERVICE PROVIDER to recover undercharges alleged to be due hereunder, and any action or claim by Customer to recover overcharges alleged to be due hereunder, shall be noted as an undercharge or overcharge claim and commenced not more than one hundred eighty (180) days after the receipt by SERVICE PROVIDER of the shipment with respect to which such undercharges or overcharges are claimed.

**6.5 Disclaimer of Freight Charges Liability.** SERVICE PROVIDER shall indemnify, defend, release, and hold harmless SLI, its parent and affiliates, and their respective directors, officers, employees, agents, successors, and assigns, (all "Schneider") from any and all liability for payment of freight charges, detention, accessorials, and any and all other costs, expenses, bills, or charges which SERVICE PROVIDER bills for its services (all "Freight Charges"). SERVICE PROVIDER also agrees

SLI's Initials: [signature] SERVICE PROVIDER's Initials: DD

Date: 6/25/18 Date: 6/4

CONFIDENTIAL



that Schneider shall not have any liability to pay SERVICE PROVIDER in any instance where Customer fails to provide funding to a payment processing agent designated by Customer for said Freight Charges or payment processing agent designated and funded by Customer fails to pay for said Freight Charges. If Customer files for bankruptcy, factors its receivables, or otherwise assigns its receivables, SERVICE PROVIDER agrees to indemnify, defend, release, and hold harmless Schneider from any and all liability for Freight Charges regardless of any other document, agreement, bill of lading, paperwork, exhibit, schedule, shipping document, amendment, attachment, addendum, transportation agreement, and/or Transportation Schedule to the contrary. This paragraph supersedes all conflicting provisions between SLI and SERVICE PROVIDER contained within this Agreement and/or any Transportation Schedule to service Customer, and/or any conflicting agreement, exhibit, addendum, amendment, schedule, shipping document, bill of lading, paperwork, and/or attachment to this Agreement and/or Transportation Schedule. Solely for purposes of this Section 6.5, and solely in the circumstance where Customer either files bankruptcy, fails to pay Freight Charges when due, or otherwise fails to provide funding to a freight payment services company designated by Customer, to the fullest extent permitted, Schneider assigns its right to SERVICE PROVIDER to pursue Customer directly for Freight Charges, and SERVICE PROVIDER agrees to indemnify, defend, release, and hold harmless Schneider for the same.

7. **Cargo Loss, Damage, or Destruction.**

7.1 **SERVICE PROVIDER's Cargo Liability.** SERVICE PROVIDER assumes liability as a common carrier for loss, damage to and/or destruction of Customer's goods, freight, and/or property while under SERVICE PROVIDER's care, custody, and/or control. Freight which has been tendered to SERVICE PROVIDER intact and released by SERVICE PROVIDER in a damaged condition, or lost or destroyed subsequent to such tender to SERVICE PROVIDER, shall be conclusively presumed to have been lost, damaged, and/or destroyed by SERVICE PROVIDER, unless SERVICE PROVIDER can establish otherwise by clear and convincing evidence. SERVICE PROVIDER shall either pay payment processing agents designated by Customer directly, or allow an offset from the amount owed SERVICE PROVIDER based on the provisions below. Customer's full actual loss, or a lower amount determined by the claims processing agent designated by Customer and SERVICE PROVIDER to be SERVICE PROVIDER's responsibility. The amount of Customer's full actual loss, damage and/or delay of ANY claims not resolved within ninety (90) days of the date of the claim may be offset. SLI or payment processing agents designated by Customer shall offset the amount in dispute from the amount otherwise owed SERVICE PROVIDER by that Customer.

7.2 **Salvage Claims.** SERVICE PROVIDER agrees to waive any and all right of salvage or resale of any of Customer's damaged freight and shall, at SLI's or Customer's reasonable request and direction, promptly return or dispose, at SERVICE PROVIDER's cost, any and all of Customer's damaged and overage freight shipped by SERVICE PROVIDER. In addition, SERVICE PROVIDER shall not under any circumstance allow Customer's freight to be sold or made available for sale or otherwise disposed of in any salvage markets, employee stores, or any other secondary outlets. In the event the damaged freight is returned to Customer and salvaged by Customer, then SERVICE PROVIDER shall receive a credit.

SLI's Initials: [signature]

Date: 6/25/18

SERVICE PROVIDER's Initials: DD

Date: 6/4

CONFIDENTIAL



  SCHNEIDER

7.3 **Claims Resolution.** After ninety (90) days, a formal meeting will be required between SERVICE PROVIDER and SLI or claims processing agent as designated by Customer to review and resolve open claims. If after an additional thirty (30) days following this meeting, there are open claims, which have not been paid, compromised, or resolved, another meeting must be established within fifteen (15) days to resolve any remaining disputed items. Any cargo claims still in dispute after this meeting will be referred to an executive of SERVICE PROVIDER and an executive of SLI that have not been directly involved in prior efforts to resolve the dispute. If the executive panel is unable to resolve any dispute or reach a compromise after reasonably diligent efforts, this cargo claim will be subject to an offset from the amount otherwise owed SERVICE PROVIDER.

8. **Indemnification.** To the proportionate extent only caused in whole or in part by acts or omissions of SERVICE PROVIDER, their agents, employees, and/or subcontractors SERVICE PROVIDER agrees to indemnify, defend and hold SLI and its Customer(s) (including their respective officers, directors, employees, subcontractors and agents) harmless from and against any and all liabilities, damages, fines, judgments, penalties, costs, claims, demands and expenses (including costs of defense, settlement, and reasonable attorneys' fees) of whatever type or nature, including damage or destruction of any property, or injury (including death) to any person, arising out of or related to:

- Any act or omission by SERVICE PROVIDER, its agents, employees, and/or subcontractors,
- Any claims or actions by SERVICE PROVIDER's employees, agents, and/or subcontractors,
- The failure of SERVICE PROVIDER, its employees, agents, and/or subcontractors to comply with this Agreement, a Transportation Schedule, and/or any applicable provincial, federal state or local law, rule or regulation that affects the obligations of SERVICE PROVIDER under this Agreement or a Transportation Schedule
- SERVICE PROVIDER's, or SERVICE PROVIDER's employees, agents and/or subcontractors, performance of this Agreement and/or any Transportation Schedule.

The obligations of SERVICE PROVIDER under this Section shall survive the termination of this Agreement and any Transportation Schedule.

9. **Miscellaneous.**

9.1 **Confidentiality.** SERVICE PROVIDER shall limit disclosure of information concerning this Agreement, and each Transportation Schedule, to only those SERVICE PROVIDER employees, agents and subcontractors directly involved in its execution and performance. SERVICE PROVIDER specifically agrees to keep confidential and not divulge or use any of SLI's and/or its Customer's proprietary, confidential, technical and/or business information ("Information") which SERVICE PROVIDER has or will receive as a result of this Agreement or a Transportation Schedule. SERVICE PROVIDER shall not be bound to keep confidential and not divulge or use any information: (i) which was known to SERVICE PROVIDER prior to SLI's or its Customer's disclosure to SERVICE PROVIDER as evidenced by SERVICE PROVIDER's prior written records, (ii) which is available to

CONFIDENTIAL



the public without fault on SERVICE PROVIDER's part, or (iii) which is required to be disclosed to comply with any applicable law or court order, provided SERVICE PROVIDER gives SLI and/or Customer, as applicable, prior written notice of a required disclosure and an opportunity to intervene. SERVICE PROVIDER shall only use SLI's and its Customer's Information to provide the transportation and related services required under this Agreement and Transportation Schedules.

**9.2 Mutual Cooperation and Resolution of Disputes.** Both parties understand and agree to cooperate in order to ensure efficient and economical transportation and related services. If any dispute arises in connection with this Agreement or any Transportation Schedule, the dispute shall, after the representatives of SLI and SERVICE PROVIDER primarily responsible for the negotiation and performance of the Agreement and/or applicable Transportation Schedule are unable, after reasonably diligent effort, to resolve the dispute, be referred to an Executive of SLI and an Executive of SERVICE PROVIDER who have not been directly involved in prior efforts to resolve the dispute. If such Executive Panels are unable to resolve any dispute after reasonably diligent effort, the matter may, by mutual agreement, be referred to binding arbitration, or either party may resort to litigation. In the event the matter is referred to arbitration or is litigated, the non-prevailing party shall bear all related costs, including the prevailing party's costs, expenses, and reasonable attorney's fees.

**9.3 Force Majeure.** This Agreement and any affected Transportation Schedule shall be temporarily suspended during any period(s) where SERVICE PROVIDER or SLI is unable to carry out its obligations under this Agreement and the affected Transportation Schedule by reason of an Act of God or the public enemy, fire, flood, labor disorder, civil commotion, closing of the public highways, government interference, government regulations, act of terrorism or war, or any similar event or occurrence beyond the reasonable control of the affected party, and neither party shall have any liability to the other party for delay in performance or failure to perform while this Agreement and the affected Transportation Schedule is temporarily suspended. Should SERVICE PROVIDER invoke this clause, SLI may use other means to fulfill Customer(s) transportation requirements.

**9.4 Applicable Law.** The terms and conditions of this Agreement and all Transportation Schedules shall be governed by, and enforced in accordance with, the laws of the State of Wisconsin, and any suit or action enforcing the terms and conditions of this Agreement and all Transportation Schedules shall be brought and adjudicated solely in the State or Federal court of general jurisdiction for Brown County, Wisconsin and both parties acknowledge and agree that such forum is convenient.

**9.5 Entire Agreement.** This Agreement including the Transportation Schedule(s) attached to this Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement. The provisions of this Agreement shall supersede all contemporaneous oral agreements and all prior oral and written quotations, communications, agreements, and contracts between SERVICE PROVIDER and SLI with respect to the subject matter of this Agreement.

**9.6 Modification.** No waiver, alteration, or modification of any of the provisions of this Agreement, or any Transportation Schedule shall be binding upon either party unless in writing signed by the duly authorized representative of the party against whom such modification is sought to be

SLI's Initials: [signature] Date: 6/25/18

SERVICE PROVIDER's Initials: DD Date: 6/4

CONFIDENTIAL



enforced. SERVICE PROVIDER agrees that SERVICE PROVIDER's rules tariff(s), circular(s) and/or other publication(s) are not incorporated into this Agreement or any Transportation Schedule. Any printed provisions on the reverse side of SERVICE PROVIDER's forms shall be deemed deleted.

**9.7 Waiver.** No provision of this Agreement or any Transportation Schedule shall be waived by any party hereto, unless such waiver is written and signed by the authorized representative of the party against whom such waiver is sought to be enforced. Waiver by either party of any breach or failure to comply with any provision of this Agreement or any Transportation Schedule by the other party shall not be construed as, or constitute, a continuing waiver of such provision, or a waiver of any other breach of or failure to comply with any other provision of this Agreement or any Transportation Schedule.

**9.8 Savings Clause.** If any provision of this Agreement and/or any Transportation Schedule is held to be invalid, or unlawful, the remainder of the Agreement or the Transportation Schedule shall remain in full force and effect with the offensive term and/or condition being stricken to the extent necessary to comply with any conflicting law. SERVICE PROVIDER agrees that the termination, breach and/or invalidity of this Agreement and/or any Transportation Schedule does not cause SERVICE PROVIDER's rules tariff(s), circular(s) or other publication(s) to govern the transportation and related services that SERVICE PROVIDER provides.

**9.9 Bills of Lading and Delivery Receipts**. SERVICE PROVIDER shall issue and sign a standard, uniform straight bill of lading or other receipt acceptable to SLI, upon acceptance of goods for transportation. All terms or conditions written or printed on the receipts or bills of lading which have not been specifically agreed to by SLI, either in this Agreement or on any signed addenda hereto, shall have no binding effect. The receipt of a bill of lading issued or executed by SERVICE PROVIDER shall be prima-facie evidence of receipt of goods in good order and condition by SERVICE PROVIDER unless otherwise noted on the face of said document. SERVICE PROVIDER shall submit to SLI the original signed bill of lading evidencing good delivery of the goods, unless otherwise specifically agreed by SLI; and in that case, SERVICE PROVIDER shall maintain custody of the original signed bills of lading and will provide them to SLI or CUSTOMER upon request. If SERVICE PROVIDER fails to maintain and provide the bills of lading as agreed, SERVICE PROVIDER assumes all risk of loss resulting from the failure to prove good delivery.

**9.10 Notices.** All notices required by or related to this Agreement shall be in writing and sent to the parties at the addresses set forth below by any means that will require an acknowledgment of receipt by the receiving party. Proof of sending any notice shall be the responsibility of the sender.

CONFIDENTIAL

SLI's Initials: [signature]

Date: 6/25/18

SERVICE PROVIDER's Initials: DD

Date: 6/4



SCHNEIDER

SLI:

Schneider Logistics, Inc.
ATTN: Vice President, Logistics Services
3101 South Packerland Drive
P.O. BOX 2666
Green Bay, WI 54306-2666

SERVICE PROVIDER:
*(Please complete address below.)*
**GP Transportation Co dba GP Transco**
ATTN:
7955 S Cass Ave, Suite #114, Darien, IL 60561

**9.11 Successors and Assigns.** This Agreement and each Transportation Schedule shall be binding upon SERVICE PROVIDER and SERVICE PROVIDER's successors and assigns. SERVICE PROVIDER shall not assign this Agreement or any Transportation Schedule without the prior written consent of SLI. Any assignment of this Agreement or any Transportation Schedule, in whole or in part, by SERVICE PROVIDER without the prior written consent of SLI shall be void and of no effect. SLI shall have the right, upon notice to SERVICE PROVIDER to assign this Agreement, and any or all of its rights, duties, or obligations thereunder, to its parent, subsidiary, or affiliated companies, and/or its (or their) respective successors-in-interest. This Agreement shall be binding upon the successors and permitted assigns hereto.

**9.12 Insolvency.** SLI or SERVICE PROVIDER may immediately terminate this Agreement and all Transportation Schedules executed pursuant to this Agreement by written notice if: (i) the other party files any petition or action under any bankruptcy, reorganization, insolvency or moratorium law, or any other law or laws for relief of, or relating to, debtors, (ii) an involuntary bankruptcy petition is not dismissed within sixty (60) days of its filing, or (iii) a receiver or trustee is appointed to take possession of the properties of the other party, unless such appointment is set aside or withdrawn.

IN WITNESS WHEREOF, the undersigned individuals have executed this Agreement as of the dates indicated and by so doing, represent and warrant that they have been or are specifically authorized to do so on behalf of the corporations or organizations they represent.

**SLI:**
**Schneider Logistics, Inc.**
By: [signature]
Name: ~~Mike Kukiola~~ Julie Laubie
Title: Vice President/~~General Manager,~~ Schneider Logistics Supply Chain Solutions
Date: 6/25/18

**SERVICE PROVIDER:**
**GP Transportation Co dba GP Transco**
By: Darius Diemintas *(Signature)*
Name: Darius Diemintas *(Print or Type)*
Title: Account Manager
Date: 6/4

00_MTA_new34_20170724; BC/tt

CONFIDENTIAL



SCHNEIDER

# MILEAGE AMENDMENT
to the
# TRANSPORTATION SCHEDULE
between
# SCHNEIDER LOGISTICS, INC.
and
# GP TRANSPORTATION, CO. DBA GP TRANSCO

CONFIDENTIAL

This First Amendment, effective as of June 1, 2019, between **Gp Transportation, Co. dba Gp Transco** (hereinafter "SERVICE PROVIDER") and Schneider Logistics, Inc. ("SLI"), amends the Truckload Transportation Schedule dated June 29, 2018 ("Agreement") between SERVICE PROVIDER and SLI to provide certain transportation services for SLI customer, Cintas, (hereinafter "Customer").

**WHEREAS** the parties desire to amend the Agreement;

**NOW THEREFORE,** in consideration of the mutual promises made between the parties, SERVICE PROVIDER and SLI agree as follows:

1. Section 3.1 of the Transportation Schedule is hereby deleted and replaced in its entire with the following:

**3.1** **Rates**. SERVICE PROVIDER shall transport all the freight tendered to SERVICE PROVIDER from, to and/or between the points and places set forth in Exhibit A on an "on-call" basis at the rates specified in Exhibit A. SERVICE PROVIDER agrees that the mileages associated with the rates set forth in Exhibit A shall be determined by using PC MILER 25 (shortest), and that SERVICE PROVIDER's Freight Charges that are based on miles will, unless otherwise notified in writing, be determined using the shortest route calculation in PC MILER 25 (shortest).



SCHNEIDER

**IN WITNESS WHEREOF**, the undersigned individuals have executed this Mileage Amendment as of the date indicated, and by so doing, represent and warrant that they have been or are specifically authorized to do so on behalf of the corporation or organization they represent.

| **SLI:** | **SERVICE PROVIDER:** |
|---|---|
| **Schneider Logistics, Inc.** | **Gp Transportation, Co. dba Gp Transco** |
| **Signature:** | **Signature:** |
| E-SIGNED by Julie Lambie on 2019-08-23 22:26:49 GMT | E-SIGNED by Julius Gaigalas on 2019-08-23 17:02:28 GMT |
| **Signer Name:** | **Signer Name:** |
| Julie Lambie | Julius Gaigalas |
| **Title:** | **Title:** |
| VP Supply Chain Solutions | Authorized Signatory |
| **Date:** | **Date:** |
| 2019-08-23 22:26:49 GMT | 2019-08-23 17:02:28 GMT |

CONFIDENTIAL

# ESIGN DISCLOSURES AND CONSENT

It is required by law to provide you with certain disclosures and information about the products, services or accounts you may receive or access in connection with your relationship with us ('Required Information'). With your consent, we can deliver Required Information to you by a) displaying or delivering the Required Information electronically; and b) requesting that you print or download the Required Information and retain it for your records.

This notice contains important information that you are entitled to receive before you consent to electronic delivery of Required Information. Your consent also permits the general use of electronic records and electronic signatures in connection with the Required Information.

After you have read this information, if you agree to receive Required Information from us electronically, and if you agree to the general use of electronic records and electronic signatures in connection with our relationship, please click the 'ACCEPT' button below.

## Statement of electronic disclosures:

You may request to receive Required Information on paper, but if you do not consent to electronic delivery of Required Information, we cannot proceed with the acceptance and processing to create a relationship with you in connection to the products, services or account.

If you consent to electronic delivery of Required Information, you may withdraw that consent at any time. However, if you withdraw your consent we will not be able to continue processing to create a relationship with you in connection to the products, services or account.

If you consent to electronic disclosures, that consent applies to all Required Information we give you or receive from you in connection with our relationship and the associated notices, disclosures, and other documents.

You agree to print out or download Required Information when we advise you to do so and keep it for your records. If you are unable to print or download any Required Information, you may call us and request paper copies. If you need to update your e-mail address or other contact information with us, you may do so by calling us and requesting the necessary updates.

If you wish to withdraw your consent to electronic disclosures, you may do so by calling us and requesting withdrawal of consent. After consenting to receive and deliver Required Information electronically, you may request a paper copy of the Required Information by calling us.

CONFIDENTIAL

If you do not have the required software and/or hardware, or if you do not wish to use electronic records and signatures for any other reason, you can request paper copies of the Required Information to be sent to you by calling us.

Your consent does not mean that we must provide the Required Information electronically. We may, at our option, deliver Required Information on paper. We may also require that certain communications from you be delivered to us on paper at a specified address.

**I have read the information about the use of electronic records, disclosures, notices, and e-mail, and consent to the use of electronic records for the delivery of Required Information in connection with our relationship. I have been able to view this information using my computer and software. I have an account with an internet service provider, and I am able to send e-mail and receive e-mail with hyperlinks to websites and attached files. I also consent to the use of electronic records and electronic signatures in place of written documents and handwritten signatures.**

CONFIDENTIAL